S. LANE TUCKER
United States Attorney

AINSLEY MCNERNEY
Assistant U.S. Attorney
ANDREA HATTAN
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: Ainsley.McNerney1@usdoj.gov
Email: Andrea.Hattan@noaa.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DUGAN PAUL DANIELS,<br><br>Defendant. | No. 1:24-cr-00006-JMK-MMS |

This document and its addenda set forth completely the terms of the plea agreement between the defendant and the United States. This agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities.

## PLEA AGREEMENT

### 1. Summary of Agreement

The defendant agrees to plead guilty to the following counts of the Information in this case:

- Count 1: Lacey Act – False labeling, in violation of 16 U.S.C. §§ 3372(d)(2),

3373(d)(3)(A)(ii), a class D felony; and

- Count 2:  Endangered Species Act – Illegal take, in violation of 16 U.S.C. §§ 1538(a)(1)(C), 1540(b)(1), a class A misdemeanor.

The United States agrees to recommend a sentence of no more than 6 months imprisonment. The defendant agrees to pay a fine of $25,000. The defendant further agrees to the special conditions of supervision or probation described below in Section 5. The United States agrees not to criminally prosecute the defendant further for any other offense related to the events that resulted in the charges contained in the Information and the National Oceanic and Atmospheric Administration (NOAA) agrees that it will not initiate any civil administrative enforcement action or proceeding against the defendant for any violation related to the events that resulted in the charges contained in the Information. Additionally, in the event of a sentence of imprisonment, the United States agrees that the defendant should be permitted to self-surrender to serve any term of imprisonment upon designation by the United States Bureau of Prisons. The parties are otherwise free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case.

The defendant will waive all rights to appeal the convictions and sentence imposed under this agreement. The defendant will also waive all rights to collaterally attack the convictions and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the pleas.

## 2. Federal Rule of Criminal Procedure 11

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) will control this plea agreement. Thus, the defendant may not withdraw from this agreement or the guilty pleas if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

## 3. Charges, Elements, Penalties, and Other Matters Affecting Sentence

### 3.1. Charges of Conviction

The defendant agrees to plead guilty to the following counts of the Information:

- Count 1: Lacey Act (false labeling), a violation of 16 U.S.C. §§ 3372(d)(2), 3373(d)(3)(A)(ii); and

- Count 2: Endangered Species Act (illegal take), in violation of 16 U.S.C. §§ 1538(a)(1)(C), 1540(b)(1).

### 3.2. Elements of the Charged Offenses

The elements of the offense charged in Count 1 – Lacey Act (false labeling) – are as follows:

1. The defendant knowingly made or submitted a false record concerning, label for, or any false identification of fish;

2. The fish had been or were intended to be transported in interstate or foreign commerce; and

3. The defendant's making or submission of a false record concerning, account concerning, label for, or false identification of fish involved the sale or purchase of, offer of sale or purchase of, or commission of an act with intent

to sell or purchase fish with a market value greater than $350.

The elements of the offense charged in Count 2 – Endangered Species Act (illegal take) – are as follows:

1. The defendant, a person subject to the jurisdiction of the United States, did knowingly take an endangered species upon the high seas;

2. The defendant knew the biological identity of the endangered species – that is, a sperm whale (*Physeter macrocephalus*); and

3. The defendant took the endangered species unlawfully, that is, without permission from the United States Department of Commerce.

### 3.3. Statutory Penalties

The maximum and minimum penalties applicable to the charges of conviction are as follows:

Count 1 - Lacey Act (false labeling):

- Imprisonment for up to 5 years;
- A fine of up to $250,000;
- Supervised release for up to 3 years; and
- A $100 special assessment.

Count 2 – Endangered Species Act (illegal take):

- Imprisonment for up to 1 year;
- Supervised release for up to 1 year; or
- Probation for 5 years; and
- A fine of up to $50,000; and

- A $25 special assessment.

### 3.4. Other Matters Affecting Sentence

#### 3.4.1. Conditions Affecting the Defendant's Sentence

The following conditions may also apply and affect the defendant's sentence:

1. Pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date.

2. Upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release.

#### 3.4.2. Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury. A defendant who is not a United States citizen may be subject to deportation from the United States following conviction for a criminal offense, may be denied citizenship, and may not be permitted to return to the United States unless the defendant specifically receives the prior approval of the United States Attorney General. In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including denaturalization and removal from the United States.

### 3.5. Restitution

There is currently no identifiable restitution tied to the charges in the Information. The defendant acknowledges that the Court will have sole discretion ultimately to determine if the defendant has liability for any restitution.

### 4. Factual Basis

The defendant admits the truth of the allegations in the Information and of the statements set forth below in this section. The parties agree that the Court may rely upon these statements to determine whether there is a factual basis to support the guilty pleas, to determine the relevant conduct applicable for purposes of the United States Sentencing Guidelines, and to evaluate the proper sentence under the criteria set forth in 18 U.S.C. § 3553(a).

### 4.1. Count 1- Lacey Act (false labeling):

As further detailed below, between on or about October 25, 2020, and through on or about November 9, 2020, in the District of Alaska, Dugan Paul Daniels (DANIELS) knowingly made and submitted false records about fish that his vessel, the fishing vessel (F/V Pacific Bounty, harvested, in violation of Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A)(ii). DANIELS' making and submission of these false records involved the sale, offer of sale, and commission of an act with intent to sell this fish, which had a combined ex-vessel value of $34,815.15 and a combined fair-market retail value of approximately $127,528. Furthermore, the fish DANIELS sold from these trips were intended to be transported in interstate and foreign commerce.

Specifically, DANIELS falsified the F/V Pacific Bounty's daily fishing logbook

(DFL), landing reports, and Alaska Department of Fish and Game (ADF&G) Fish Tickets regarding where he harvested fish on two Individual Fishing Quota (IFQ) trips. DANIELS was the F/V Pacific Bounty's captain on both trips. DANIELS' false reports were intended to make it appear as though the sablefish he landed on those trips were retained lawfully in federal waters, when, in fact, he harvested that sablefish illegally in State of Alaska waters. The State of Alaska has two separate limited entry sablefish fisheries in the state waters of Southeast Alaska: (1) in Northern Southeast Inside (NSEI) Chatham Strait; and (2) Southern Southeast Inside (SSEI) Clarence Strait. The NSEI and SSEI sablefish fisheries each require a separate permit and are highly valuable limited entry fisheries. In 2020, NSEI and SSEI permits were worth hundreds of thousands of dollars. DANIELS held neither a NSEI nor a SSEI permit in 2020 and, therefore, he could not target or retain sablefish lawfully in Chatham or Clarence Straits.

Between on or about October 25, 2020, until on or about October 29, 2020, DANIELS falsified the F/V Pacific Bounty's DFL by falsely reporting the vessel deployed four sets of gear targeting sablefish and halibut at locations southwest of Cape Ommaney, Baranof Island, Alaska. Global Positioning System (GPS) data reveals that, in fact, DANIELS fished at least 200 nautical miles away in or near southern Clarence Strait east of Prince of Wales Island and was never at or near the locations he reported in the DFL during this fishing trip. The F/V Pacific Bounty had a Vessel Monitoring System (VMS) operating for a portion of this trip, which also showed the F/V Pacific Bounty fishing in or near the southern end of Clarence Strait. The VMS was shut off on October 26, 2020, for

the remainder of the trip. DANIELS thereafter falsified the ADF&G Fish Ticket, IFQ landing report, and DFL related to this trip to conceal that he unlawfully caught sablefish in State of Alaska waters. DANIELS also falsely reported the locations where he caught halibut and other species on these same documents. From this trip, DANIELS landed approximately 1,832 pounds of sablefish, approximately 2,145 pounds of halibut, and other catch and sold that fish to a commercial processor in Ketchikan, Alaska. The processor paid DANIELS $12,891.10 for that fish.

Between on or about November 3, 2020, until on or about November 9, 2020, DANIELS falsified the F/V Pacific Bounty's DFL by falsely reporting the vessel deployed two sets of gear targeting halibut in southern Chatham Strait just east of Baranof Island, Alaska, and retained no sablefish from those sets. The locations DANIELS reported for those sets have depths of approximately 1,170 to 1,500 feet, which is consistent with halibut fishing. But GPS and VMS data reveal that, in fact, the F/V Pacific Bounty was never at the locations DANIELS reported and, instead, fished approximately 0.7 to 1.2 nautical miles east at locations with depths consistent with sablefish fishing (approximately 1,800 to 2,100 feet). Text messages reveal that DANIELS fished for and retained sablefish (not halibut) on those two sets in Chatham Strait. DANIELS knew that to catch and retain sablefish in Chatham Strait he needed a State of Alaska permit and he knew he did not have such a permit. Daniels also falsified his DFL by reporting that he harvested the sablefish he retained on this trip in federal waters west of Chichagof Island (approximately 150 nautical miles from southern Chatham Strait) and by reporting he

harvested the halibut from this trip in Chatham Strait. In addition to his vessel's DFL, DANIELS also falsified his IPHC logbook, IFQ landing report, manual IFQ landing report, Alaska Department of Fish and Game (ADF&G) Fish Ticket, and, later, made multiple false statements to OLE personnel about where he targeted and retained halibut and sablefish on this fishing trip. DANIELS did all of this to make it appear that he was fishing legally. From this trip, DANIELS landed approximately 11,682 pounds of sablefish, approximately 1,119 pounds of halibut, and other catch on November 9, 2020, and sold that fish to a commercial processor in Juneau, Alaska. The processor paid DANIELS $21,924.05 for this fish.

## 4.2. Count 2 – Endangered Species Act (illegal take):

Between on or about March 25, 2020, and on or about March 26, 2020, in the District of Alaska, DANIELS, a person subject to the jurisdiction of the United States, knowingly took an endangered species of wildlife – namely, a sperm whale (*Physeter microcephalus*) – by having a crewman shoot the whale and trying to ram the whale with the F/V Pacific Bounty. DANIELS was the F/V Pacific Bounty's captain. All of this conduct occurred upon the high seas, specifically, approximately 31 nautical miles southwest of Yakobi Island, Alaska. In text messages to multiple individuals, DANIELS recounted these events – specifically, his crew shooting the sperm whale, his efforts to ram the whale with the vessel and coming within five feet of doing so, and his desire to kill the sperm whale. The sperm whale (*Physeter macrocephalus*) is an endangered species of wildlife listed pursuant to 16 U.S.C. § 1533. *See* 50 C.F.R. § 17.11(h). DANIELS took the

sperm whale unlawfully, that is, without permission from the United States Department of Commerce.

## 5. The United States Sentencing Guidelines, Guideline Application Agreements, and Sentencing Recommendations

### 5.1. Advisory U.S. Sentencing Guidelines

The defendant acknowledges that the Court will consult the advisory United States Sentencing Guidelines as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose. The Guidelines do not establish the statutory maximum or minimum sentence applicable to the offenses to which the defendant is pleading guilty. The Guidelines are not mandatory and the Court is not bound to impose a sentence recommended by the Guidelines.

### 5.2. Guideline Application Agreements

All agreements regarding Guidelines applications are set out in this section.

### 5.2.1. Acceptance of Responsibility

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend the defendant for a two level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility. If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance of responsibility—including by inappropriately seeking to delay sentencing—the United

States will not make or, if already made will withdraw, this recommendation and motion.

**5.3. Sentencing Recommendations**

The United States Probation Office will prepare the defendant's presentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G. Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the Guidelines calculation in the presentence report, and to present evidence in support of their respective sentencing arguments.

The United States agrees to recommend a sentence of no more than 6 months imprisonment. The defendant agrees to pay a fine of $25,000 and to the special conditions of supervision or probation set forth below. Except as set forth in this agreement, the parties are otherwise free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case based on any relevant criteria, including the stipulated facts set forth in Section 4, any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory Sentencing Guidelines and the sentencing factors set forth in 18 U.S.C. § 3553.

The defendant acknowledges that the United States is obligated to provide the Court with truthful and relevant information that may inform the sentencing decision, and that doing so will not entitle him to rescission of this agreement so long as the United States does, in fact, recommend a sentence that is not inconsistent with this agreement.

**5.3.1  Special Conditions of Supervised Release or Probation**

**5.3.1.1  Commercial Fishing Prohibition**

The defendant agrees not to engage in commercial fishing for a period of one year to commence on the first day of supervision or probation. During this period, the defendant will not obtain commercial fishing licenses, operate any fishing vessel for the purpose of commercial fishing, or collect any earnings from any commercial fishing activities.

### 5.3.1.2    Vessel Monitoring

The defendant agrees as a condition of supervised release or probation that any commercial fishing vessel that the defendant owns, manages, operates, or partially owns or manages must have a National Marine Fisheries Service (NMFS)-approved Vessel Monitoring System, as defined in 50 C.F.R. § 679.28(f)(1). The defendant further agrees to comply with the requirements set forth in 50 C.F.R. § 679.28(f), except that the defendant agrees that any vessel described above in this paragraph must have a Vessel Monitoring System transmitting at all times when engaging in any fishing activity, notwithstanding the provisions in 50 C.F.R. § 679.28(f)(6)-(7). Additionally, the defendant agrees that if, at any time, such Vessel Monitoring System is not installed properly, or ceases operating or transmitting properly, the defendant is required to notify his United States Probation Officer within 72 hours of learning of any such issue.

### 5.3.1.3    Community Service

The defendant agrees to complete 80 hours of community work service during any term of supervision or probation on a schedule and location to be approved by his United States Probation Officer.

**6. Additional Agreements by the United States**

In exchange for the defendant's guilty plea and the Court's acceptance of the defendant's pleas and the terms of this agreement: (1) the United States agrees that it will not criminally prosecute the defendant further for any other offense now known arising out of the subject of the investigation related to the charges brought in the Information in this case and the defendant's admissions set forth above; and (2) the National Oceanic and Atmospheric Administration (NOAA) agrees that it will not initiate any civil administrative enforcement action or proceeding against the defendant for any violation – now known – arising out of the subject of the investigation related to the charges brought in the Information in this case and the defendant's admissions set forth above.

However, if the defendant's guilty pleas or sentence are rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason: (1) the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case notwithstanding any term of this agreement, to include any charges dismissed thereof; and (2) NOAA will be free to initiate any civil administrative enforcement action or proceeding against the defendant for any violation arising out of the investigation of this case notwithstanding any term of this agreement, to include any violation involved in any charges dismissed thereof. The United States shall be entitled to the automatic reinstatement of any such dismissed charges. As an express term of this agreement, the defendant hereby agrees to waive any defense that the statute of limitations bars the prosecution of such a reinstated charge by the United States. The defendant further

agrees, as an express term of this agreement, to waive any defense that the statute of limitations bars NOAA from initiating any civil administrative enforcement action or proceeding against the defendant for any violation arising out of the investigation of this case in the event that the defendant's guilty plea or sentence is rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason.

Additionally, the United States agrees that the defendant should be permitted to self-surrender to serve any term of imprisonment upon designation by the United States Bureau of Prisons.

## 7. Additional Agreements by the Defendant

### 7.1. Waiver of Trial Rights

By entering into this agreement, the defendant intentionally and voluntarily waives the following trial rights:

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have counsel appointed at public expense to represent the defendant at trial;

- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

- The right to contest the validity of any searches conducted on the defendant's property or person.

## 7.2. Waiver of Appellate Rights

The defendant waives the right to appeal any conviction for any of the charges set forth in this agreement. The defendant further waives the right to appeal any sentence imposed pursuant to this agreement, except on the grounds that the sentence exceeds the maximum term authorized by statute. The defendant understands that this waiver includes, but is not limited to, the length of any term of imprisonment; forfeiture (if applicable); length, terms, or conditions of probation or supervised release (if applicable); any fines or restitution; and any and all constitutional or legal challenges to any conviction or guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support a plea of guilty.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement.

### 7.3. Waiver of Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack any conviction or sentence imposed pursuant to plea agreement, or any portion thereof, including the length of any term of imprisonment; forfeiture (if applicable); length, terms, or conditions of probation or supervised release (if applicable); any fines or restitution; and any and all constitutional or legal challenges to any conviction or guilty plea. The only exceptions to this collateral attack waiver are: a challenge to the conviction or sentence alleging ineffective assistance of counsel, based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; or a challenge to the voluntariness of the defendant's guilty plea. The scope of this waiver applies to a collateral attack brought in any procedural vehicle, including but not limited to a challenge brought pursuant to 28 U.S.C. § 2241 or § 2255. The filing of such a challenge shall constitute a material breach of this agreement.

### 7.4. Waiver of Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement. The defendant agrees that the statements made in signing this agreement shall be deemed usable and admissible in any subsequent proceeding, regardless of whether the plea agreement or any other portion thereof is subsequently withdrawn or rescinded. The foregoing provision acts as a modification and express waiver of the provisions of Fed. R. of Evid. 410 and Fed. R. Crim. P. 11(f), and is effective upon the defendant's in-court admission to the factual basis. This provision applies regardless of whether the Court accepts this plea agreement.

U.S. v. Daniels

### 7.5. Consent to Plea Before Magistrate Judge

The defendant has the right to enter a plea before a United States District Judge. The defendant, defense counsel, and the attorney for the Government consent to have the defendant's plea taken by a United States Magistrate Judge pursuant to Fed. R. Cr. P. 11 and 59. The parties understand that if the Magistrate Judge recommends that the plea of guilty be accepted, a pre-sentence investigation report will be ordered pursuant to Fed. R. Crim. P. 32. The parties agree to file objections (if any) to the Magistrate Judge's Report and Recommendation within seven calendar days, thereby shortening the time for objections set forth in Fed. R. Crim. P. 59. The District Court Judge will decide whether to accept this plea agreement at the time it imposes sentence in the case.

### 7.6. Agreement to be Sentenced Within 120 days of Entering a Plea

The defendant agrees to be sentenced within 120 days of appearing before the Court to enter a guilty plea. The defendant acknowledges that if he seeks to delay sentencing past that time without the prior consent of the United States, this conduct will be considered inconsistent with acceptance of responsibility and will forfeit any entitlement to a Guidelines reduction for acceptance of responsibility. The United States acknowledges that a delay beyond 120 in sentencing attributable to the Court, the government, or other factors beyond the defendant's control will not be considered inconsistent with acceptance of responsibility.

### 7.7. Release or Detention Pending Sentencing

The defendant acknowledges that once his plea of guilty is accepted by the District Judge, it will be his burden to demonstrate by clear and convincing evidence that he is not

likely to flee or pose a danger if he wishes to be released pending sentencing. As an express term of this plea agreement, the defendant agrees to abide by all release conditions that may be imposed and acknowledges that his failure to comply with any such condition may result in his detention pending sentencing, and that such failure will constitute a material breach of this agreement, and will entitle the government, at its option, to make a sentencing recommendation different from that set forth above, or to rescission of this agreement altogether.

### 7.8. Payment of Monetary Penalties and Cooperation with Financial Investigation

The defendant agrees that any monetary penalties imposed (including any fine, forfeiture, restitution, or assessment) will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 upon entry of judgment. The defendant acknowledges that any monetary penalties or forfeiture money judgment will be submitted to the Treasury Offset Program so that payments to the defendant may be applied to federal debts.

Within 30 days of the entry of the guilty plea in court, the defendant agrees to truthfully complete under penalty of perjury a financial statement provided by the United States Attorney's Office, and to update the statement within 7 days of any material change. The defendant further agrees to make full disclosure of all current and projected assets to the U.S. Probation Office before imposition of sentence and again before termination of supervised release or probation, such disclosures to be shared with the United States Attorney's Office.

### 7.9. Breach and Other Circumstances Entitling the Government to Relief

The defendant acknowledges that, if the United States demonstrates by a preponderance of the evidence that he has failed in material way to perform any obligation set out in this agreement, the United States is entitled, at its option, to recission of this agreement. This entitlement supplements, and does not replace, any other form of relief that the United States might be entitled to in the event of a breach, to include any other specific remedy set out under the terms of this plea agreement. The defendant acknowledges if the plea agreement is rescinded, the defendant's admission to the factual basis will be admissible against the defendant as specific in Section 7.4 of this agreement.

## 8. The Parties' Acceptance of this Agreement

I, DUGAN PAUL DANIELS, the defendant in this case, affirm this document contains all of the agreements made between me (with the assistance of my attorney) and the United States regarding my guilty plea. There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty plea.

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I appear to enter my plea.

I enter into this agreement voluntarily, with the intent to be bound, and with a full

understanding that the concessions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill my obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand and agree that the government's burden to prove a breach will be by a preponderance of the evidence.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter a guilty plea. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea. My attorney and I have discussed all possible defenses to the charges contained in the Information. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the

statutes applicable to my offense and sentence as well as the possible effect the Guidelines may have on my sentence. However, I understand that my attorney cannot guarantee any particular sentence except as set out herein, and I expressly acknowledge that my decision to plead guilty is not based on a belief that I am certain to receive a particular sentence that is not set out in this agreement.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of violating 16 U.S.C. §§ 3372(d)(2), 3373(d)(3)(A)(ii) (Lacey Act; false labeling (felony)) and 16 U.S.C. §§ 1538(a)(1)(C), 1540(b)(1) (Endangered Species Act; illegal take), as charged in Counts 1-2 of the Information.

DATED: _4-2-2024_ _____
DUGAN PAUL DANIELS
Defendant

//

//

//

//

//

//

//

//

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charges to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: _29 APR 24_ _____

JANE M. IMHOLTE
Attorney for Dugan Paul Daniels


On behalf of the United States, I accept the defendant's offer to plead guilty under the terms of this plea agreement.

S. LANE TUCKER
United States Attorney

DATED: _May 14, 2024_ _____

AINSLEY MCNERNEY
Assistant United States Attorney
United States of America

DATED: _May 13, 2024_ _____

ANDREA HATTAN
Special Assistant United States Attorney
United States of America